[Crim. No. 10201. Second Dist., Div. Four. Oct. 20, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT MANUEL BUSTILLOS, Defendant and Appellant.

Charles Richard Hand, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E.. James, Assistant Attorney General, and Ernest S. Gould, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was charged with violation of section 11500.5 of the Health and Safety Code (possession of heroin for sale). A jury trial was waived; the court found defendant guilty as charged; probation was denied and defendant was sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment of conviction.

On the evening of November 13, 1963, at approximately 7:30 p.m., Harry E. Dorrell, a narcotics division officer of the Los Angeles Police Department, observed defendant drive into the parking lot across the street from the Diamond Hotel, located on East Commercial Street in Los Angeles. The officer had received information from a confidential informant and had also overheard a telephone conversation to the effect that a narcotics transaction was about to take place at the Diamond Hotel; that prior narcotics transactions had taken place at this same hotel. Included in this information was the descrip-

tion of a person who might be involved. Defendant reasonably matched this description.

From the officer's vantage point, he observed defendant enter the Diamond Hotel and proceed upstairs. Defendant returned to the main floor of the hotel after approximately five minutes. He then left the hotel and walked to his car. Officer Dorrell and a fellow officer drove alongside defendant's car in an unmarked police vehicle. Officer Dorrell alighted and approached defendant's car. He identified himself as a police officer and asked defendant his name. He then requested defendant to get out of his car and to step around the cornor of the building behind the car in order that they could talk. Defendant complied with his request and walked with the officer to a point about 15 or 20 feet from defendant's automobile. ▇ As the officer proceeded to talk with defendant he observed defendant make two quick motions with his hands toward his pants pockets. The officer asked defendant if he had a gun in his possession and defendant answered, "No, search me." The officer reached into defendant's left front pants pocket and felt several large objects. Drawing from his 11 years experience on the narcotics detail, the officer formed the opinion that the objects were packages of narcotics. He removed the objects from defendant's pocket. They consisted of four paper bindles about 1 or 2 inches in length and about one-half inch thick. Each one of the four paper bindles contained seven smaller paper bindles. The officer then reached into defendant's right front pants pocket and removed another bindle similar to the four bindles he had found in defendant's left pocket. Taped to the side of this bindle was a smaller package which contained seven bindles.

▇ Officer Dorrell testified that, when he reached in defendant's pockets and found the paper bindles, he asked defendant what he was going to do with the narcotics, and defendant replied, "I was going to deliver them to another person." He next asked him where he got the narcotics, and defendant stated, "I just got them from a guy named Joe in Room 131." The officer then stated that he knew there were narcotics on the third floor of the hotel. Defendant again stated that he got them from Joe in Room 131. However, when the officer asked the same question again, defendant replied "Well, they are in Room 306." Defendant stated that he had a key to Room 306 on his person. The officer removed two keys from defendant's pocket. Dorrell asked defendant where in the apartment the narcotics were located,

Defendant replied "They are up on top of the closet." While defendant remained downstairs in the custody of another officer, Dorrell proceeded to Room 306 and unlocked a padlock on the door with one of the keys he had taken from defendant. On top of the closet in the apartment the officer found numerous packages which appeared to contain a large quantity of narcotics and also narcotic paraphernalia. (It was stipulated at the trial that a forensic chemist found that a number of the packages contained heroin.)

It was further stipulated that a chemical analysis was made of the contents of the packages discovered on the person of defendant by Officer Dorrell and that these also contained heroin.

In defendant's testimony he denied that he was in possession of heroin. He had gone to a pool hall located at the corner of Commercial and Los Angeles Streets to find the owner of a car he had borrowed. When he came out he was arrested. He was never in the Diamond Hotel. Officer Dorrell was not one of the arresting officers and he had not told Dorrell that he was going to deliver any packages or that he had gotten them from Joe.

Defendant contends that his conviction was the product of an illegal search and seizure. He argues that the search of his person and of the apartment were not incidental to a lawful arrest. Admittedly the searches were made without a warrant and thus must be justified as a reasonable incident to the valid arrest of defendant.

 The evidence sufficiently established that Officer Dorrell had reasonable cause to arrest defendant. In following up the information which he received concerning narcotic activities at the Diamond Hotel, Officer Dorrell was clearly warranted in stopping defendant for questioning when the officer saw him arrive at the hotel and then leave a few minutes later. Further, there is sufficient evidence to support the finding that defendant thereafter freely consented to allow Dorrell to search his pants pockets when defendant's furtive movements indicated to the officer that he might be attempting to reach for a gun or other weapon. When the officer then reached into defendant's pocket and felt the paper bindles which his experience told him contained narcotics, he had reasonable cause to arrest defendant and, as an incident thereto, to remove and confiscate the narcotics in defendant's possession. It makes no difference that the search

conducted after the officer's discovery preceded rather than followed defendant's arrest.

We agree with defendant that the follow-up search of the apartment which turned up the additional evidence against defendant was not incidental to his arrest, and that this evidence should have been excluded. The arrest was not made *on the premises searched* but on the street outside. In *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889], the defendant was validly arrested in a car parked on a street a short distance ("a few feet south") of an apartment where he was staying. In holding that the prosecution had not justified the search of the apartment as incidental to defendant's arrest, the court stated (at p. 865): "That arrest, however, was not effectuated *on the premises thereafter searched,* but in a car parked on a public street. It follows that the search was not in fact 'incidental to' defendant's arrest under the settled construction of that phrase by the federal and California courts, for [quoting] 'it was at a distance from the place thereof and was not contemporaneous therewith.' [Citations.]" However, a reversal in the instant case is not required because there was clearly sufficient evidence found on defendant's person as the result of the lawful search (at least 35 bindles of heroin) to compel a finding of possession of heroin for the purpose of sale, without regard to the evidence later discovered in the apartment as the result of the illegal search. The latter evidence was merely cumulative. The error in admitting it, therefore, was not prejudicial to defendant.

During the pendency of this appeal, *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], were decided. Defendant contends that Officer Dorrell's testimony, concerning the statements allegedly made by him to the officer immediately following his arrest, was inadmissible under the four point *Dorado* test.

In *Dorado* it was held that it was error to introduce evidence of statements made by a defendant to the police, where (1) the investigation had begun to focus on the defendant, (2) he was in custody, (3) a process of interrogation had been undertaken which tended to elicit incriminating statements, and (4) the police had not effectively informed him of his absolute rights to counsel and to remain silent, and the evidence did not show any waiver of such rights. We need not attempt to determine from this record whether the questioning on the street amounted to "a process of interrogation

that lent itself to eliciting incriminating statements'' because violation of the above stated rule is not, automatically, reversible error unless the statements made constituted a confession of guilt of the crime charged. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.) If the statements are merely admissions, an examination of the record must be made to determine whether the introduction of the statements resulted in prejudice to defendant within the meaning of article VI, section 4½ of the California Constitution. (*People* v. *Hillery,* 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382] ; *People* v. *Watson,* 46 Cal.2d 818, 835-838 [299 P.2d 243].)

██ ''When the statement is such that it contains only facts from which guilt may be inferred, it is admission rather than a confession. [Citations.]'' (*People* v. *Propp,* 235 Cal.App.2d 619, 641 [45 Cal.Rptr. 690].) ██ A confession ''. . . leaves nothing to be determined, in that it is a declaration of his [defendant's] intentional participation in a criminal act. . . . [Citations.]'' (*People* v. *Ferdinand,* 194 Cal. 555, 568 [229 P. 341].) ██ Here, defendant's statements, while certainly incriminatory in nature, do not constitute a confession of guilt of the crime of possession of narcotics *for sale.*

Without considering the evidence found in the hotel room—which we have determined was illegally seized—and without regard to the evidence of the statements made by defendant to the arresting officer, we conclude that the evidence of defendant's guilt was overwhelming. The prosecution's evidence established that defendant was apprehended with a large quantity of heroin on his person. That he possessed the contraband with knowledge of its narcotic character, and for purposes of sale, are the only logical inferences which could be raised under the circumstances presented. We have examined the record in accordance with the mandate of article VI, section 4½, and conclude that the error was not prejudicial, in that, in the absence of the error, there is no reasonable possibility that a result more favorable to defendant would have been reached.

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.